IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM STEVENS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:07-cv-0748 |
| ) | Judge Trauger |
| RICKY BELL, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Pending before the court are the petitioner's Objections (Docket No. 98) to the Order filed by the Magistrate Judge on March 18, 2011 (Docket No. 97), which denied the plaintiff's Third Supplemental Motion for Discovery (Docket No. 88). The respondent has filed a response in opposition to the petitioner's objections (Docket No. 103). For the reasons discussed below, the court will overrule the petitioner's objections and affirm the Magistrate Judge's ruling.

## BACKGROUND

In 1999, the petitioner, William Stevens ("Stevens"), was convicted in the Criminal Court for Davidson County, Tennessee of two counts of first degree premeditated murder, for which he received the death penalty.[1] The jury found that Stevens hired his 18-year-old neighbor, Corey Milliken, to kill Stevens' wife, Sandra Stevens, and mother-in-law, Myrtle Wilson. In his pending habeas petition, Stevens maintains his innocence and claims that numerous errors by his trial counsel led to his conviction. (*See* Docket No. 49 (Second

---

[1] Unless otherwise noted, the facts are drawn from the Magistrate Judge's Memorandum and Order (Docket No. 97) and from the parties' filings.

Amended Petition for Writ of Habeas Corpus).)

The petitioner's theory of the case, both at trial and today, is that Milliken acted alone, killing the two women in a sexual rage. Milliken confessed his involvement in the murders, and it is undisputed that he performed the killings. Milliken initially told police that he acted alone and sexually assaulted Sandra Stevens, but he later changed his story and stated that Stevens had hired him to kill the women.[2] The Tennessee Supreme Court summarized the relevant facts regarding the crime scene and the trial:

> Both victims were found lying in their beds. Ms. Wilson was wearing a nightgown, which had been pulled above her waist. Her underwear was on the floor. There was a substantial amount of blood on her body, on the bed, and on several items in the room. Dr. Emily Ward, a pathologist with the Davidson County Medical Examiner's Office, performed autopsies on the victims. Her examination of Ms. Wilson revealed that she died from stab wounds and manual strangulation. . . .
>
> Mrs. Stevens was completely nude and left in a "displayed" position, that is, lying on her back with her legs spread apart. She died as a result of ligature strangulation. However, there was blood on her knees, indicating that the murderer had killed Ms. Wilson first and then transferred some blood onto Mrs. Stevens. There were also pornographic magazines placed around her body, as well as a photo album containing nude photos of the victim, presumably taken by the defendant during their marriage. . . .
>
> Dr. Ward's examination of Mrs. Stevens revealed a small, superficial tear in her vagina. Dr. Ward testified that she thought it was a post-mortem change in the skin, which likely occurred while the body was being moved for examination. Although she conceded on cross-examination that the decedent could have been sexually assaulted after death, she did not believe this to be the

---

[2] The petitioner alleges that one of his trial counsel's most significant errors was his failure to introduce Milliken's initial confession at trial. (*See* Docket No. 49 at 9-10.)

> case because there was no bruising, swelling, or hemorrhaging around the tear. . . .
>
> The defense presented evidence of Corey Milliken's sexual infatuation with Sandi Stevens. [Milliken's brother] testified that [Milliken] told him that the defendant had shown him pictures of his wife in lingerie and in the nude, and that the defendant told Milliken that she wanted to have sex with both of them at the same time.
>
> The defense theory was that Milliken committed sexual murder as an act of aggression precipitated by an argument with his mother and step-father the night before the crimes. . . . As evidence that these murders involved a sexual component, the defense introduced the testimony of crime scene expert, Gregg McCrary. Mr. McCrary testified that the display of pornographic magazines around Mrs. Stevens could "best be interpreted as an attempt to further humiliate or degrade" the victim, which "goes to the motive of a sex crime."

*Tennessee v. Stevens*, 78 S.W.3d 817, 825-28 (Tenn. 2002) (footnotes omitted).

On direct appeal, Stevens' conviction and death sentence were affirmed, first by the Tennessee Court of Criminal Appeals and then by the Tennessee Supreme Court. *Id.* at 845. Subsequently, Stevens filed a petition for post-conviction relief in Davidson County Criminal Court, claiming, among other things, that his trial and appellate counsel were ineffective. The trial court denied the petition, and the Tennessee Court of Criminal Appeals affirmed the denial. *Stevens v. Tennessee*, No. M2005-00096-CCA-R3-PD, 2006 Tenn. Crim. App. LEXIS 1020, at *2 (Tenn. Crim. App. Dec. 29, 2006), *perm. app. denied*, No. M2005-00096-SC-R11-PC, 2007 Tenn. LEXIS 511 (Tenn. May 21, 2007).

Stevens then filed a Petition for Writ of Habeas Corpus in this court, pursuant to 28 U.S.C. § 2254. He claims, in relevant part, that his trial counsel's many errors violated his Sixth

Amendment right to effective assistance of counsel. One specific alleged error is that counsel failed to employ a forensic examiner to perform DNA testing on (1) the bed sheets from the beds of Sandra Stevens and Wilson, (2) the swabs taken from the skin of Sandra Stevens and Wilson, and (3) Milliken's clothing. (Docket No. 49 ¶ 10(E)(1).) The court will refer to this aspect of the petitioner's ineffective assistance of counsel claim as his "DNA testing claim."

The petitioner moved for discovery, arguing in his Third Supplemental Motion for Discovery that he "requires additional discovery in the form of seriological testing of the physical evidence collected by law enforcement from the crime which is relevant to investigating and establishing violations of his constitutional rights." (Docket No. 88 at 1.) Specifically, the petitioner sought testing of bed sheets, the victims' and Milliken's clothing, and physical samples taken from the victims and Milliken. He argued that, "[h]ad counsel tested the items Petitioner now seeks in this discovery motion, evidence that Mr. Milliken ejaculated, or otherwise left DNA in or near the intimate parts of Mrs. Stevens or Mrs. Wilson, would have been conclusive proof as to Mr. Milliken's true motivation for the crime, establishing that his confession to the rage-sex killing was truthful." (*Id.* at 2.)

The Magistrate Judge denied the petitioner's motion on two alternative grounds. First, the Magistrate Judge found that discovery was not warranted because, even if the testing found Milliken's bodily fluids at the crime scene, "this additional evidence would not establish conclusively petitioner's innocence." (Docket No. 97 at 4.) He stated that "[e]vidence of a sexual component to Milliken's crime falls far short of conclusive proof that petitioner is innocent of soliciting these murders." (*Id.*)

4

Second, the Magistrate Judge found that "the petitioner has failed to exhaust this claim by failing to fairly present it during state post-conviction proceedings." (*Id.*) The Magistrate Judge explained:

> In his amended petition for post-conviction relief, petitioner alleged the ineffective assistance of trial counsel. Among a host of alleged shortcomings of trial counsel, petitioner included a claim that trial counsel had failed to obtain the expert assistance of a forensic pathologist to examine numerous questions, including "whether the forensic evidence supports the fact that a sexual assault in fact occurred, especially whether the superficial postmortem laceration of the vagina noted by the testifying pathologist, Dr. Emily Ward, could have been caused by activity of a sexual nature at or around the time of death."
>
> Despite this assertion in the amended post-conviction petition, petitioner offered no proof or argument on this claim at the post-conviction evidentiary hearing. Moreover, petitioner's post-conviction brief before the Tennessee Court of Criminal Appeals, while asserting other claims of ineffective assistance of trial counsel, fails to mention defense counsel's failure to obtain serological or DNA testing of evidence recovered from the crime scene. Finally, the opinion of the Tennessee Court of Criminal Appeals in petitioner's post-conviction proceeding fails to mention any claim by petitioner that his trial counsel was ineffective due to his failure to obtain the serological testing that he now seeks in this motion.

(*Id.* at 4-5 (citations omitted and paragraph break added).)

The petitioner has filed timely objections to the Magistrate Judge's Order, pursuant to Federal Rule of Civil Procedure 72.

## **ANALYSIS**

Rule 72 provides that, when a magistrate judge has decided a non-dispositive pretrial motion, a party may file objections to the order. Fed. R. Civ. P. 72(a). The district court must

"modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A); Rule 10, Rules Governing § 2254 Cases ("A magistrate judge may perform . . . duties . . . as authorized under 28 U.S.C. § 636.").

The petitioner argues that the Magistrate Judge erred because a habeas petitioner need only show "good cause" for discovery, not that the discovery would conclusively establish innocence. (Docket No. 98 at 3-4.) He further argues that the finding of procedural default was premature and that, regardless, he can overcome any default by showing sufficient cause or a fundamental miscarriage of justice. (*Id.* at 4-5.) In response, the respondent argues that both of the Magistrate Judge's alternative holdings were correct. (Docket No. 103 at 6-8.)

The court finds that the Magistrate Judge did not clearly err or misapply the law in denying discovery on the grounds that the petitioner's DNA testing claim has been procedurally defaulted. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Accordingly, Rule 6(a) of the Rules Governing § 2254 Cases provides that "[a] judge may, *for good cause*, authorize a party to conduct discovery under the Federal Rules of Civil Procedure." (Emphasis added). A petitioner has shown "good cause" "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" *Bracy*, 520 U.S. at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)) (ellipses in original). "The burden of demonstrating the materiality of the information requested is on the moving party." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quotation marks omitted).

6

Regardless of the substance of the requested discovery, it is proper to deny the request if the petitioner's underlying claim is procedurally barred. *Id.* at 975. Section 2254 provides that a habeas petition shall not be granted "unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."[3] 28 U.S.C. § 2254(b)(1)(A). Thus, "'state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.'" *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). A prisoner "'does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so.'" *Id.* (quoting *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Furthermore, when a habeas petitioner brings an ineffective assistance of counsel claim involving multiple errors by counsel, the petitioner must have exhausted his state remedies *as to each specific error*; it is not enough that the petitioner brought an ineffective assistance of counsel claim in state court based on other factual grounds. *Id.*; *Pillette v. Foltz*, 824 F.2d 494, 497-98 (6th Cir. 1987).

"When the petitioner has failed to present the grounds [for his claims] to the state courts and has exhausted his claims because no state remedy remains available, his grounds are procedurally defaulted." *Landrum*, 625 F.3d at 918. In that instance, the petitioner is barred from pursuing the claims in federal court unless he can "show cause to excuse his failure to

---

[3] A petitioner has not exhausted his remedies if "he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

present the claims, as well as actual prejudice to his defense at trial or on appeal," or, alternatively, unless he can show that failure to consider the claims would create "a fundamental miscarriage of justice." *Id.* at 919.

Here, the petitioner did not raise his DNA testing claim on direct appeal. Nor does he dispute the Magistrate Judge's finding that, although the petitioner did mention the lack of forensic testing in his post-conviction petition, he did not pursue those allegations during the trial court's evidentiary hearing or on appeal. Indeed, although the post-conviction appellate court's opinion discussed numerous alleged errors by Stevens' trial counsel, the opinion did not mention counsel's failure to order DNA tests. *See Stevens*, 2006 Tenn. Crim. App. LEXIS 1020, at *63-84. At a minimum, then, the petitioner did not fairly present his DNA testing claim to the post-conviction appellate court. In addition, no state remedy remains available to Stevens on his DNA testing claim. *See* Tenn. Code Ann. § 40-30-102(c) (providing that a prisoner may file only one petition for post-conviction relief and that, "[i]f a prior petition has been filed which was resolved on the merits by a court of competent jurisdiction, any second or subsequent petition shall be summarily dismissed.").

Therefore, it appears that the petitioner has procedurally defaulted his DNA testing claim by abandoning it during his state-court post-conviction proceedings. *See Landrum*, 625 F.3d at 919 (finding that a petitioner defaulted a portion of his ineffective assistance of counsel claim by failing to raise it in post-conviction proceedings). The petitioner argues that his post-conviction counsel was "ineffective for failing to request the [DNA] testing he currently seeks" and that "[c]ounsel's ineffectiveness constitutes the necessary cause to overcome any procedural default."

(Docket No. 98 at 5.) But a petitioner "cannot rely on ineffective assistance of post-conviction counsel as cause [to excuse a procedural default,] because there is no constitutional right to an attorney in post-conviction proceedings."[4] *Landrum*, 625 F.3d at 919 (citing *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991)).

The petitioner further argues that he "can overcome any default by establishing a miscarriage of justice," because he "has always contended that he is actually innocent of the crime for which he was convicted and sentenced." (Docket No. 98 at 5.) But to overcome a procedural default in this manner, the petitioner must "submit[] new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Landrum*, 625 F.3d at 919; *see also Williams*, 380 F.3d at 973. "'To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'" *Williams*, 380 F.3d at 973 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Here, even if DNA testing shows that Milliken's bodily fluids were present at the crime scene, that evidence would not necessarily have

---

[4] The petitioner suggests that the court should delay ruling on his objections until the Supreme Court decides *Maples v. Thomas*. (Docket No. 98 at 5 n.1.) In March 2011, the Supreme Court granted certiorari to hear an appeal of the Eleventh Circuit's decision in *Maples v. Allen*, 586 F.3d 879 (11th Cir. 2009). *Maples v. Thomas*, 179 L. Ed. 2d 644 (2011). The question presented in that appeal is "[w]hether the Eleventh Circuit properly held . . . that there was no 'cause' to excuse any procedural default where petitioner was blameless for the default, the State's own conduct contributed to the default, and petitioner's attorneys of record were no longer functioning as his agents at the time of any default." (*Maples v. Thomas*, No. 10-63 (U.S.), Questions Presented.)

It is uncertain whether the Court's holding on that question will be relevant here. Additionally, it is unlikely that the Court will decide the case in the near future, given that the parties have not yet submitted their merits briefs. Consequently, this court does not believe that it is necessary or prudent to delay resolution of the instant discovery motion.

prevented a reasonable juror from convicting Stevens. It is true, as the petitioner contends, that such evidence would have supported the theory that Milliken killed the victims in a sexual rage. But it is entirely possible that Milliken sexually assaulted Sandra Stevens *and* that the petitioner hired Milliken to kill her. The two situations are not mutually exclusive, and a reasonable juror could have concluded that both occurred. Thus, the petitioner has not shown that his requested discovery would allow him to establish a miscarriage of justice.[5]

Finally, the petitioner argues that "any finding of default at this early stage in litigation . . . is premature, as [he] has not had the benefit of fully briefing this issue." (Docket No. 98 at 4.) But, if the petitioner has not briefed the default issue to his satisfaction, he can blame only himself. The respondent raised the default issue in his response to the petitioner's discovery motion (Docket No. 92 at 5, 7), and the Magistrate Judge based his decision on the default (Docket No. 97 at 4-5). The petitioner could have fully briefed the issue in his reply in support of the discovery motion (*see* Docket No. 93) or in his current objections.

In sum, it appears that the petitioner has procedurally defaulted his DNA testing claim and that he cannot show cause or a miscarriage of justice sufficient to overcome the default. Because the evidence that he seeks would not entitle him to relief on that procedurally barred claim, the petitioner has not shown "good cause" for his requested discovery.[6]

## **CONCLUSION**

---

[5] Stevens has not identified any other new evidence that he will submit in support of his habeas petition.

[6] In light of this conclusion, it is unnecessary for the court to address the Magistrate Judge's alternative holding that good cause for discovery did not exist because evidence of Milliken's DNA at the crime scene would not conclusively establish the petitioner's innocence.

For the reasons stated herein, the plaintiff's Objections (Docket No. 98) are **OVERRULED**. The March 18, 2011 Order filed by the Magistrate Judge (Docket No. 97) is **AFFIRMED**, and the petitioner's Third Supplemental Motion for Discovery (Docket No. 88) is **DENIED**.

It is so Ordered.

Entered this 18th day of May 2011.

_____
ALETA A. TRAUGER
United States District Judge